On the 4th of April 1812,
Chancellor Brown
delivered the fallowing Opinion and Decree.
Before I proceed to an opinion on the merits of this case, it may be proper to notice some objections, which have been made to the reception of certain exhibits, as evidence in the cause. The first I shall mention is the deposition of Joseph Williams, objected to on the ground of competency as well, as credibility.
This objection I consider well founded. The Witness is a defendant, and his interest may be deeply affected by the ultimate decision, which may be given in this cause. Besides other grounds of interest, be is foe real owner (notwithstanding he seems, by his answer, to think otherwise,) of ail Yciser’s interest in the Furnace property, including half the lands belonging thereto, and is responsible for the payment of Yeiser’s partnership debts, to secure which he has executed a Deed of Trust, (of the same date with Yeiser's Deed to him,) of this property to Borland and others; in which Deed Yciser is also a party.
The next objection is to the reception of parol testimony, viz. that of F. Price and others, to explain the agreement of the 13th of March 1807. This I consider also a good objection. There is nothing in this agreement to take it out of the general rule, respecting the admission of said testimony to explain a Deed. So far, therefore, as those W itnesses are introduced for that purpose, I think their testimony inadmissible.
There are some other objections, to certain depositions, for want of notice, and for irregularity; on which it is necessary only to observe, at present, (as I have endorsed my ideas on the papers themselves.) that, whenever the objecting parties have attended, and cross-examined the Witness, I have con *516 sidered all defects, as well for want of notice a* formality, waived.
This cause involves two important inquiries. 1st. What is the plaintiff entitled to recover from the defendants, or either of them ?
2dly. What is the extent of his remedy against the defend" ant C. D. Williams ? In other words, is the defendant personally liable for the payment of any sums in which he may be found indebted ?
First, What is the plaintiff entitled to recover, or can he recover any thing from Ysiser’s representatives ?
His claim against them is for a balance due from Union Forge to Blount Torry Furnace; and for extra advances on behalf of said Furnstce. It is contended that those claims are the private and exclusive property of the plaintiff, unconnected with his partnership character, to which he is entitled in the same manner, that he would have been for money lent or advanced to Yciser, as an individual, upon his individual credit ; that if Ydscr'a estate should prove insolvent, the whole loss would devolve on the Complainant; and therefore that he has not parted with his interest in them by the agreement of the 13th of March 1807, transferring his partnership rights. But the debt due from Union Forge was a debt, due to the Furnace partnership, and not a debt, contracted with the plaintiff in his private or individual character. If it should be lost in consequence of Yciser’s insolvency, the loss must be jointly borne by the plaintiff and the defendant C. D. Williams, the other partners in the Furnace Firm, as the plaintiff’s extra advances -were made on the credit, and for the benefit of that firm. And those seveial transactions having never been closed *till after the 13th of March 1807 ; nor any separate contract made with Yciser respecting them; the defendant, on that day, had a claim against the partnership for them, in the same manner that he would, under the agreement of that, day, have a right, in case of Yciser’s insolvency, to require the defendant C. D• Williams to pay his the plaintiff’s increased proportion of the debts occasioned by such insolvency. It therefore appears to me, on the best consideration I have been able to give the subject, that the plaintiff’s interest in those claims was a partnership interest, which was transferred by the fob *517 lowing clause of the agreement of the 13th of March 1807, viz. “• Also al! the right, interest and benefit oí him the said “ James Price, as well in and to all the debts, tsums of money “ due, owing or payable to all or any of the said several part- “ Here in the said several iron Works,” &c. &c.
The correctness of this construction of the agreement has been contested by the supposition, that the claim against Yeissr wight have exceeded the whole price, which' was to be given» for the aroperty. But how would this argument apply to t¡w> snp|K«iüon that the debts, which the defendant C. D. Williams had assumed to pay, might have exceeded the whole value of the property purchased ? The presumption is that the partners had some knowledge of the state of their affairs; and, should a fact happen, as has been supposed, on either side, the Court might fairly presume some fraud or mistake in the transaction, which might be proved and relieved against.”
It will here be understood, that the Court offers, at present, no opinion as to the real amount of YeisePs debt, or the right of the defendant C. D. Williams to recover it from the heirs of Yeiser. This, it is believed, cannot be properly ascertained in the present suit.
Secondly, what is the plaintiff entitled to recover of the defendant C. D. Williams ? On this point, I am equally satisfied that the plaintiff has a just claim against this defendant, for the full amount of the purchase money, agreed to be given by the aforesaid Contract of March 1807, with interest from the respective periods of payment, after, deducting therefrom the sum of §1015,06 ceñís paid at the Bank of Discount and Deposit, and the farther sum of $250 paid Clements. This last credit, as it has been much controverted, requires some remarks. By the agreement of November 1806, the plaintiff undertakes to pay, first, the interest or discount, for one year, on a Note in Bank; 2dSy, the second payment of $500, to Clements ; and 3dly, half the Debts of the Forge; making three distinct Covenants. In the agreement of March 1807, this former agreement Is specialty referred to, and it is there stipulated that the defendant C. D. Williams “ shall and will “ pay, satisfy and discharge al! and singular the debts and en- “ gagnments, due, owing or payable from the said James “ Price and C. D. Williams, as late partners in the aforesaid *518 “ Forge; and, generally, all claims against the said Forge; so “ that the said James Price shall be exonerated and discharged “ from a Covenant contained in a certain Agreement hereto- “ fore, on or about the 29th of November last past, &c. &e. “ for the payment of one half of the said Debts.” Here we see the extent, to which the agreement of November 1806, was to be set aside by the new contract; viz. the payment of half the Forge Debts. These $500, were once a partnership debt, being for the purchase of the Forge Seat, &c. But the partners had, before this last agreement, provided for its payment in a certain way; and this provision is not set aside by this agreement inore than the Covenant for the payment of the interest or discount. *
My reason, for charging the defendant C. D. Williams for the payment of the full amount of the purchase money and interest, according to this agreement of March 1807, is simply that he has contracted to do so; and I know of no rule, by which one contracting party, where the contract is fair, and has been deliberately entered into, (which appears to have been the case here,) can avoid that contract without the consent of the other. If he has paid debts, he was bound to do so. If he has made improvements, they must be considered for his own benefit. The property was absolutely his own.
I come now to the last, and to me not least difficult point: that is, is the defendant C. D. Williams personally liable for the payment of this money ?
This leads me to an examination of the agreement; the last clause of which is drawn with a particular view to this question, and is so cautiously worded, as scarcely to admit of doubt; as to the intention of the parties.
I am not prepared to say that such a clause as this in an agreement renders the whole contract void, or would itself be a void Covenant; or that B. might not purchase an estate from C., with the liberty of restoring it, in a reasonable time, in discharge of the purchase money. And this certainly would be the effect of this Covenant, in the latitude contended for; for if the estate is the only security, and there is no personal responsibility, why not give it up to the Vendor, to dispose of as he pleases, without the expence and delay of a suit; since this would be all that could be obtained by a suit ? *519 But, in that ease, there would be a special trust and confidence that the property should not, in the mean time, be deteriorated: there would he a moral obligation on the Vendee, which would create an implied assumption, on his part, to return it at least as good as he received it, and perfectly disencumbered, to the Vendor. It would he entirely different from any case where there was a personal responsibility ; in which, such special trust and confidence need not be supposed. Without, therefore, expressing any positive opinion on the legal effect of this clause, provided no change of circumstances in the property sold had taken place; and taking the defendant’s exposition as the correct one; let me ask, ought the plaintiff now to be tied down to this security ? It is iu vain to talk of its improved state, upon the evidence before us. The testimony of Joseph Williams is inadmissible; anti Cahil’s goes, principally, to improvements at the Forge, with which we have nothing to do. But the whole mass of testimony goes to shew that it is now destitute of every thing requisite and necessary to carry on the operations: and the unavoidable destruction and waste, which time produces, must convince every one of its deteriorated state. If debts have been paid, the defendant C. D. Williams was bound by contract to pay them : and it has been before observed, that he has no right to abandon his contract without the plaintiff’s consent. But what was the situation of this property on the 17th of December 1808, when the defendant C. D. Williams offered to deliver it up ? And had he it then in his power to restore it? This offer was made from Baltimore, two hundred miles from the plaintiff or the property, and four months after ho had given a lease upon it, for upwards of two years after the offer was made ; not for the plaintiff’s benefit, as has been alleged, but for his own; and to a tenant, whom he must have known the plaintiff would not have accepted of, because it was known to him that the plaintiff had sold out, in part, to avoid any connexion with him. It is said in the Answer, that this lease embraced no part of the real property sold by the plaintiff; and the defendant claims the benefit of all the personal property conveyed by that sale. But the lease, which is dated 30th July, 1808, some months before the offer of surrender, is all the defendant C. D. Williams's Interest in the *520 Furnace; and at that time he held the plaintiff’3 half part. But it is said, the plaintiff’s title being superior, he could have evicted the tenant; and if not before the termination of his lease, he would have been entitled to the Rent. But for the payment of that Rent there was no security; and its amount is, as appears by the papers in this cause, disputed by the parties to the lease.
Under this view of the case, could the defendant avail him» self of this offer to return the property ? (a doctrine once contended for, though not by his Counsel here.) And how ought it to operate in discharge of his personal responsibility ? I mean not to reflect on the character of the defendant C. D. Williams. From my knowledge of him, I would suppose him incapable of doing, intentionally, a dishonest or dishonourable act. But, finding himself unable to comply with his contract, which I have no doubt was entered into with good faith, and deceived by the flattering prospects, held out to him by the other defendant, Joseph Williams, he consented to lease the property to him in July. In the December following, finding bis expectations again disappointed, be made the offer of the property. It was then beyond his control; and, surely, it was not right to confide to one, who might ufterly destroy without the possibility of making compensation, and who, it appears, has considerably injured that property, which he contends is the plaintiff’s only security for, the payment of the whole purchase money, not only of that, but other property. Whatever his rights might once have been under his contract, I think him now personally responsible, for the balance of the purchase money, beyond what that property will pay.
It has been said that the plaintiff has no right to recover any thing, as the defendant has received no Title. A complete Title, before all the heirs of Yeiser come of age, could not have been expected. But the Court will not compel the defendant to pay ’till his title is perfectly secured. This is agreeable to the universal practice.
As the defendant, C. D. Williams, cannot have complete justice without a cross bill, he will be permitted to file one, and to make the heirs of Yeiser parties, if he thinks proper, *521 ¡.o try the validity of ihe release mentioned in his Answer, and also to ascertain more correctly the amount of YeiseYs debt.
The Mortgage to the defendants, brothers of C. D. Williams, embraces no part of the real estate sold by the plaintiff to the defendant; and 1 very much doubt whether the last clause in the agreement embraces the personal property. This would be a reason, with me, for construing the agreement, as the plaintiff contends; that the Debts in Bank were to be immediately paid or assumed, according to the understanding of the parties at the time of contracting; and, that the Debts at Batik have not been paid, is an additional reason, why 1 consider the defe ndant personally responsible; as the persona! property seems wholly disposed of, or wasted.
For these reasons, I am of opinion, that the plaintiff is not entitled toanv balance for extra advances to the partnership, which may have been due to him on the 13th of March 1807, the date of the last contract between him and the defendant C.D. Williams; but that any such balance, whatever it may have been, was transferred to the said C. D. Williams by the contract aforesaid; that, under all the circumstances of this case, the said C. D. Williams cannot be entitled to return to the plaintiff, the Furnace property, the subject of the Contract aforesaid, or such of it, as is remaining, in its injured and ruinous condition, or to restrict the plaintiff’s security for the purchase money to that property alone ; but that the plaintiff is entitled to recover from the defendant the amount of said purchase money, subject to the following credits; viz. $1015,06 cents, paid by the defendant at the office of Discount and Deposit in Baltimore, and, ihe farther sum of $250, paid to Clements ; that the Mortgage to Samuel Williams and others, brothers of C. D. Williams, does not cover that part of the real property, appertaining to the Furnace, which was the subject of the contract between the plaintiff and the defendant C. 1). Williams; and that is doubtful even, rt bother it covers that part of the personal ¡woperty : but they were properly brought before the Court, if upon no other ground than this, that the profits of the real estate, which were conveyed to them, might, after the payment of their debt, be attached for the satisfaction of the plaintiff’s debt; and that the plaintiff, who appears, by an Exhibit in this cause, to have procur *522 ed a Deed, to Frederick; Price and William lWMechen, irons the widow of Englehard Yeiser, and from Joseph Williams and Elisabeth his wife, Richard Sex Kingsmore and Rebecca his wife, and Catharine M. Yriser, but which has not been duly proved, as to all the parties, or recorded in proper time as to any of them, ought, before he demands payment of the balance of the purchase money aforesaid, to procure a sufficient Deed of Conveyance, to himself, for the legal title to the said one fourth of the Furnace real property from the said widow of Englehard Yeiser, and as many of his heirs, as may be capable in lavv of conveying, and a sufficient deed of release, from the said Frederick Price and William Mechen, of all their right and title therein, and then execute to the said C. D. Williams a sufficient Deed, with general warranty, for the game, and moreover file in the Office of this Court, a Bond, with sufficient security, in the penalty of twenty thousand dollars, payable to said C. D. Williams, and conditioned for the complete indemnification of the said C. D. Williams, hia heirs and assigns, against the claim or claims of such of the heirs of said Yeiser, as shall not have conveyed as aforesaid. Under this view of the case, it is unnecessary to express any further opinion on the various exceptions filed to the Commissioner’s Reports.
It rs THEREFORE ADJUDGED, ORDERED AND DECREED, that, upon the plaintiff's procuring the Conveyances from the widow and adult heire of Englehard Yeiser, and the release from Frederick Price and William M'Mcclwn, executing the Deed with general warranty to the defendant C. D. Williams and filing Bond with sufficient security, in the Clerk’s office of this Court, in the manner specified in the foregoing opinion f then the said C. D. Williams do pay to the plaintiff the sum of $21734,94 cents, with six percent, interest on $3669,13 cents, part thereof from the 13th day of March, 1807; (that being the amount of the note at Bank, which said C. D. Williams was bound to take up at the date of .the contract;) on one fourth of the residue thereof from the first day of January, 1809,’til! paid; on one other fourth from the first day of January, 1810, ’till [mid ; and on the balance from the first day of January s 1811, ’till paid, together with the costs, which the plaintiff hag expended in prosecuting the suit. And if the said C. D. Williams shall not have paid the aforesaid sum of money, with in *523 ferest as aforesaid, within 120 days after the plaintiff shall have complied with the precedent conditions hereby required of him, then , who are hereby appointed Commissioners for that purpose, any two or more of whom may act, are hereby authorized and required, after having advertised the time and place of sale for sis weeks, in some newspaper, published in the town of Staunton, and at the door of the Court house of Augusta County, on one Court day at least, to sell at public auction, for cash, the one undivided fourth part of the real property sold by the plaintiff to the defendant C. D. Williams, by the contract of the 13th of March, 1807, aforesaid; to wit> one undivided fourth part of the Mount Torry Furnace, and the lands thereto appertaining; and. out of the proceeds of said sale, that they do pay first the costs and charges thereof, then, to the plaintiff, the money, with interest and costs hereby de" creed to him, if sufficient there be for that purpose ; and the balance, if any, that they do pay over to the defendant C. D-Williams, or his order.
It Is ¡briber adjudged, ordered and decreed, that the Bill of the plaintiff be dismissed as to the defendants Samuel Williams, Benjamin Williams, Amos A■ Williams and George Williams; but without costs. As to the representatives of Englehard Yeiser, this cause is continued for farther proceedings; and, on the motion of the defendant C. D. Williams, by his counsel, leave is given him to file a cross Bill against Joseph Williams and (he said representatives of Ydser
The counsel of the defendant, C. D. Williams, objected to the foregoing Decree, and contended that, if the Court subject-* ed his client to personal responsibility at all, they should direct the furnace property to be first, sold, and the said C. D. Wil. Hams should then be responsible for the residue ; in order that the said C. D. Williams, who had no objection to the sale o^' said property, might only appeal from so much of the' Decree as subjected him to personal responsibility, and thereby not encounter the risk of damages on the whole amount of the Decree. The Court not having thought proper io reform its '.Decree according to this principle, he appealed Irom so much of the said Decree, as directed him to pay to the plaintiff the. saoney and interest therein mentioned,
*524 The plaintiff also appealed from so much of the same De» cree, as disallowed his claim for extra advances.
The cause was argued here, (in the absence of the Reporter,) on the 4th and 5th of February, 1817, by Nicholas and Wick-ham for C. D. Williams, and Chapman Johnson and Wirt for Price, on a preliminary question, whether the motion made in the Court'below, to remove the suit to the Federal Court, ought to have prevailed, or not.
Upon this point, Judge Roane delivered the following opinion of this Court.
“ The Court is of opinion, that, upon the true construction of the 32th section of the Judicial Act of the United States, the motion made in this case to remove the cause, from the Court of Chancery, into the Circuit Court of the United States, was properly over-ruled. That section, if it extends at all to cases, in which citizens are joint defendants with aliens or citizens of other States, does not embrace cases, like the present, in which citizen defendants have, also, essential interests in the cause, which may be affected by a removal into the Federal Court. The Court adopts this opinion upon the construction of that Act, merely; and without reference to the question whether, in this particular, it be constitutional or not. This course is pursued by the Court on account of its thinness at this time. It has no hesitation, however, in saying, that it does not consider that the case of Brown v. Crippin & Wise, 4 H. &. M. 173, decided that question. The question of constitutionality was not made in that case; and the decision turned, exclusively, upon the construction of the Act. That question is to be considered, therefore, as still open; except so far as It may be affected by the principles settled by the Court in the case of Hunter v. Fairfax, A Manf. 1—59 ; as to which, for the reason before assigned, the Court at present gives no opinion.
The cause was farther argued on the 17th, 18th, 19th, 20tb, 21st and 22d of March, 1817, by Nicholas, Call and Wickham, for Williams, and Johnson"and Wirt for the Executrix of Price, who had departed this life.
The Counsel for Williams relied on the following points :.
*525 1st Thai, the Court ought not to have decreed a sale before a complete title to the property was made.
2d. That by the agreement of March 13th, 1807, Williams wrs exonerated from all personal responsibility, and the Court erred in decreeing against him personally.
3d. That there was nothing in the evidence filed, nor in the report? of the Commissioner, which justified the Court of Chancery in departing from the stipulation that the property should be the only security; but both shewed the propriety of adhering to it.
4th. That the plaintiff, not being able to comply with his contract, and a Decree to account having been entered, and reports returned, by which it would appear that C. D. Williams had disbursed large sums of money in paying debts, charged on the plaintiff’s one fourth, a Decree ought to be entered for the payment of the monies so advanced by the defendant.
5th. That, even on the principles contended for by the plaintiff, the land was the primary fund for the satisfaction of his claim; and no personal Decree ought to have been entered against the Appellant, until that was disposed of, and then only for the deficiency, that should appear.
6th. That there could have been no Men intended on the personal property, which was constantly changing.
For Price’s Executrix, it was contended, that the Decree was wrong in disallowing his claim for extra-advances ; because that claim was for a debt due to him from Yeiser’s representatives; and, by the contract of March 1807, his interest was conveyed, in such debts only, as were due to the respective firms, not his interest in a debt due to himself, from a member of .the firm, or from the firm itself: but that the Decree was right in other respects.
In support of this last position, the Counsel insisted,
1st, That the plaintiff’s failure to convey the legal title presented no objection to the relief he sought: because such conveyance was not a condition precedent: because it appeared, on the face of the contract, that the legal title was in Yeiser’s heirs, some of whom were infants: and because (ho want of legal title, and the non-age of Yeiser’s heirs, made it necessary to come into a Court of Equity for relief:
*526 2d, That C., D. Williams was not exempt from personal liability, under the contract of March, 1807; because it being a personal contract, and the only remedy given by it being a personal remedy, no stipulation in the contract could exempt him from personal liability; and because it was not the intention of the contract so to exempt him.
3d, That, by the contract, C. D. Williams was bound forthwith to provide for the debts in Bank, and pay Price's proportion of the partnership debts, for which no security was deemed necessary; and the property was to be security for the other payments.
4th, That, whether the clause respecting security is to be so restricted, or is to be construed? as extending to all the payments, yet C. D. Williams was bound to the careful preservation and management of all the property purchased by him and to a faithful application of that property and its profits to the payment of the monies due from him.
5th, That under either construction of the contract, payments voluntarily made by him did not diminish the fund for security, but left the whole amount standing, as security ¿for balances unpaid.
6th, That if the plaintiff’s security was to be restricted to the property sold, then the personal property and the profits of the real, must be ascertained by an account, and injury to the real property by an issue of quantum damnificatus : but that it was mot to be so restricted ; because of the inadequacy of such inquiries to do justice to the parties ; because C. D. Williams did not apply the property, as he was bound to do, did not carefully preserve or manage it, and had it not, with its profits, ready to be applied to the payment of the monies due from him.
7th, That C. D. Williams, by the Deed of Trust for the benefit of his brothers, and the Lease to Joseph Williams, had disabled himself from restoring the property to the plaintiff; and that, on this subject, a temporary inability was equivalent to an eternal one. (a)
Inreply to this last point, it was said that C. D. Williams was not bound to restore the property. He had even a right to sell ^ ? and the buyer would have taken it subject to Price's lien. There it was ; let Price take it. If Williams was incapacitated from delivering it, did that incapacitate Price from claiming *527 at ! Is equity to go beyond the law, and for the purpose of enforcing a forfeiture ?
Judge Cabell. On the 13th of March, 1807, Jatnes Price and C. D. Williams entered into articles of agreement, by which Price agreed to sell and convey to C. D. Williams an undivided fourth part of Mount Torry Furnace, in the County of Augusta, (in which the parties had long been partners,) together with one fourth part of the lands and premises appertaining thereto, and of all the tools, utensils and implements used therewith or thereon ; and also of all the horses, oxen, teams, waggons, carriages, gears, wood, coal, unwrought or wrought iron, indented servants and stock of every nature, and all and every other matter and thing appertaining either to the aforesaid Furnace, or to a certain Forge in the said County of Augusta, and lately held in copartnership by and between the said parties, and also all the right, interest and benefit of him the said Price, in and to all debts or sums of money owing to or payable to all or any of the several partners in the said iron works; as all contracts, agreements and engagements made, contracted or entered info, by and between the said several partnerships or either of them, and any other person or persons, whereby the said several partnership concerns or either of them, can or may be benefiited.
In consideration of the foregoing covenants on the part of Price, C. D. Williams bound himself to pay the sum of $23,000 in the manner set forth in the said articles of agreement; to pay and discharge all the debts due from the said Price and Williams, as late partners in the Forge aforesaid, and to pay Price’s proportion of all debts due from the Furnace partnership. There then follows an article, which provides that Price shalS canse a title to one fourth of the Furnace lands and premises to be made to Williams, who was thereupon to convey the same, in trust, for the purpose of securing the payment aforesaid, and generally, the true performance of the agreement on the part of Williams: and the articles of agreement cod elude with the following stipulation: “ that the said property, so as “ aforesaid to be conveyed to the said C. D Williams, shall be s< the only security for the payments afons.dd, and performance s‘ of this agreement on his part; it being hereby expressly *528 “ agreed and understood by and between the parties to these “ presents that neither the said C. D. Williams, his heirs, exe- “ cutors, administrators, estate or effects shall, at any time here* “ after, be answerable, or in any manner liable for the payment “ aforesaid, for the performance of any covenant or agreement “in these presents contained, farther than the said property, “ so as aforesaid to be conveyed to him, will extend to dis» “ charge and satisfy the same.”
The principal questions, made in this case, arise on the construction of the clause last recited.
Written contracts would be worse than useless, if the parties, after having said in writing, that they mean one thing, should be permitted to prove by witnesses, that they mean another. The parol testimony in this case, in relation to the intention, is, therefore, utterly inadmissible. And even if it were permitted to adduce such testimony to explain, in a doubtful casen the intention of the parties, it would be unnecessary in the present instance. For, if language has power to exhibit tho intention so palpably, as to exclude all possible doubt, that power has been effectually exercised in the case before us. Williams agreed to purchase the property, and to pay a stipu lated price for it. But it was not the intention of either party that he should be Hable in his person or estate, for that stipulated price. Both parties intended that the property to be conveyed should be the only security for the money agreed to be paid for it; that the property to be conveyed, and not Williams, should be liable for the purchase money. I cannot doubt that it was competent to Williams to insist on such a stipulation, and now to avail himself of the benefit of it. Tile prudence of the stipulation is proved by the result. I have no doubt that the clause, which thus substitutes a lien on the property, in lieu of personal responsibility, extends to the personal as well as real fund ; not merely because it is just that it should be so, but because I think it is expressly provided for. The terms “ the said property so as aforesaid to be conveyed to the said C. D. Williams,” have reference to the preceding part of the covenant, which describes the property to be conveyed, and thus embrace the whole property both real and personal, in possession and in action, as fully as if the same had been again particularly repeated.
*529 I concur in the opinion that the property, thus subjected to the iieu, is io be regarded as a pledge. Such of it as was in possession, passed. at once, by consent of both parties, into the hands of Wiilimu:, who also had the power of collecting the choses in action, for which purpose, he might, if neeessr'-y, have used the uarne f Price. Williams, then. to be <. onsidered as a pledge holder for a debt due from himself, and for which he had stipulated that there should be no other security, but the pledged fund. As such, I consider that he had a right to surrender the pledged fund to his creditor ; and if he had surrendered the whole, he would have been totally exonerated, both as a pledge holder and as a debtor. If he would neither surrender (he pledged fund, nor pay the purchase money, a Court of Chancery would subject that fund, or so much thereof as might be necessary, to the payment of the purchase money. But suppose, (as is alleged in the case before us) only a part of the pledged fund was offered to be surrendered; and that the residue has been wasted, used or disposed of by Williams, so that a Court of Chancery can no longer act directly upon it. Is Williams to be discharged of all obligation in relation to that residue ? or will he be permitted, (in the language ascribed to him by one of the witnesses) “ to do no more than it may please him to do ?” I am clearly of opinion that he is not thus discharged. Although the clause in the Covenant so often referred to, will exonerate him from paying, as a purchaser^ the price stipulated to be given for the property, he will, nevertheless, be accountable, as a pledge holder for the real value of the property so wasted, used or disposed of, except, so far as it may have been applied to the objects of the pledge. He has covenanted that the property, which he received, shall be Price's security, and his only security. Shall he be permitted to impair that security by fraud, negligence, misconduct, waste or' an application of it to his own uses, and not be compelled to make compensation ? I understand it to be admitted, that if he waste the fund, or if loss happen to it through his wilful default or misconduct, he will be personally responsible therefor. If he has used, or disposed of the fund to his own use, so that it has not been applied, or is not now ready to be applied to the object of the pledge, viz. the payment of the purchase money,
*530 I consider him equally responsible. But a difference is sought to be made in this case, because it is said that the parties in* tended that the property should be used. I admit that was the intention of the parties; and farther, that they must have expected that much of the property, from its very nature, would be consumed by that use ; and, in this last respect, it differs from an ordinary pledge. This however, only justifies that, which would, otherwise, be an illegal violation of trust. But, although it gives him the right to use the property, it does not exempt him from tlie obligation of accounting for the value of that, which has been used, and not applied as aforesaid. Nor is the case varied by the property having been used or consumed in the operations of the furnace; for that was for Williams’s and not Price’s benefit. These, in my opinion, are the results, not only of the general principles of law and equity, but of the particular provisions of the last clause in the covenant, so much relied on by Williams; for its language is that he is not to be personally liable for the payments aforesaid, “ farther than the said property, so as aforesaid to be conveyed to him, will extend to discharge and satisfy the same.” Had it not been for this stipulation, he would have been personally liable for the whole of the agreed price. As at is, he is exempted from all personal responsibility beyond the value of the property ; of course, he remains liable to the extent of $ai value. However, as he held it only as a pledge, he will be. discharged for so much, as he may have forthcoming, or may have applied to the objects of the pledge.
This distinction, between Williams’s liability as a purchaser^ and his liability as a pledge holder, is not a distinction without a difference. The last clause in the covenant destroyed the former, but established and perpetuated the latter. The former extended to the whole price stipulated, although it might have been a thousand times greater, than the worth of the property ; the latter is restricted to the property itself, orto its real value only.
The result of these principles is, that Williams had a right to surrender the whole or any part of the pledged fund. If he surrenders or offers to surrender a part only of the fund, he is nevertheless liable for any waste, or injury, done to the part, thus surrendered, or offered to be surrendered, by his gross *531 misconduct, or wilful default; and ho is accountable for the balance uot thus surrendered, or offered, including sucls debts as may have been lost by bis negligence. But, against these charges, he should have credit for all payments, he may have made towards the purchase money, (including Price's proportion of the debts, he may have paid) and also such losses, as may have happened to the fund isy the act of God.
I concur in the opinion, that the time, when Price received Williams's letter of December, 1808, is the proper period, when the offer to surrender was made, and should have been accepted ; and I am farther of opinion that Williams is not liable for subsequent waste or dilapidation; this exemption, however, is not to extend to any portion of the fund, which may have been since applied to his own use. 1 consider Price to be entitled to the debt due from the Ydscrs, and to his portion of all the debts due at the time of the offer to surrender, but liable to Williams for any advances, which Williams may have since made on his account. I concur in the opinion that there is no longer a necessity for selling the pledged fund, but that Price is reinstated in all his rights of property tisercin.
I am therefore of opinion that the Decree be reversed; and the cause remanded, to be finally proceeded in according to these principles.
Judge Bo axe. For the general grounds of mj opinion in this case, I beg leave to refer to the opinion and decree to delivered by the President. That decree has been drafted in a spirit of concession, so far as it relates to me, as to minor points, and with a view to procure as much unanimity, as is practicable in the ultimate decision of this cause.
While we are all unanimous as to many of the principle* involved in this case, I regret that the wordiy Judge, who has last spoken differs from the rest of the Court on one point which cannot be deemed unimportant. While he admits in the fullest terms, that the Appellant was exempted from personal responsibility, for the purchase money, by the terms of the contract of March 13th, 1807, he has adopted a construction, which, in effect, amounts to the same thing; by holding the Appellant liable, (if I understand him correctly,) for all the personal and perishable property, annexed to the forge ansi *532 furnace, under all possible circumstances. It undoubtedly .amounts to the same thiDg, if, (of which there is no doubt,) that property, in addition to the real subject, is adequate to cover the debt in question. To this point, I shall apply the few remarks 1 have to offer, and rely, for the other parts of the case, (or such of them as are deemed proper to be noticed,) on the Decree, to be pronounced as aforesaid.
S think the Court has conceded enough, (possibly more than enough,) in admitting that the personal subject is at. all embraced by tlie Men, and that, for all unjustifiable dilapidations thereupon, he shall ho held personally liable. More than this I cannot concede: and I am not absolutely sure that even this is not going too far. It is not upon the terms of the contract that I have consented to go thus far: but upon the general justice of holding the subject purchased liable for the payment of the purchase money, and upon the understanding, which seems to have prevailed, on the part of the Appellant, that the personal subject was also comprehended. That understanding, however, has never been manifested, (but quite the contrary) to the exteat, to which this construction would carry it s that is, to make the Appellant liable for the return of the personal property, under all possible circumstances: he has never admitted himself liable for any dilapidations, or to restore mors of that property, than should be on hand at the time of the offer to return it. On the ground of the Appellant’s assent and understanding, therefore, this is the ultimatum that should bind him; and as the other ground of general justice, just mentioned, may be limited or extended by the express contract of the parties, it may well be doubted whether the criterion established by the Court does not rather give the Appellee too much, than loo little, in relation to the personal subject.
The contract of March 13th, 1807, is substantially divisible into two parts: 1st. That which conveys the purchased property from the Appellee to the Appellant; and 2dly, That which re-convc-ys it, as it were, or a part of it, in the shape of a 'pledge. As to the first part of this contract, it is specific ; and goes into detail, as to both the real and personal subject. After conveying the land and furnace, it conveys specifically, and by a minute description, all the personal property, to which it relates. This, in the opinion of the contracting parties, was *533 accessary to convey that property; and it would seem to be equally necessary iu the re-conveyance thereof, if it had been intended to embrace the personal subject. That, minuteness, however, is not absolutely necessary, and would be readily dispensed with, if, in the last part, there were even general words of reference to the first part, or clear and unambiguous expressions competent to reach it. As to the conveying 'part of this contract, the case would be made complete, by shewing what articles were on the premises at the dale oí the contract, and the Appellant could thenceforth take possession of them: but as to the re-conveying part, there is both a defect of any clear expressions to shew that my personal goods were also comprehended, and of all expressions indicating whether the same identical goods are to be forthcoming, or goods of the same value or amount only. There are no clear expressions, (i? any expressions,) in the contract, going to any of these important particulars. Admitting that the personal goods are embraced by the contract, the idea, that the same identical goods are to be returned, is refuted as well by the want of a stipulation to that effect, as by the character and nature of the articles : many of them were articles of consumption, and subject to decay, and would even perish through the mere efflux of time, before the days of payment had arrived. And, as to íhe amount to be restored, why was it not slated, if it were intended, that it should be so restored, and whether an aggregate amount of the articles would be sufficient, or whether, the same amounts of the several distinct classes would do. These considerations, added to the general objection of giving a lien upon mere fluctuating and perishable property, would turn the scale against a construction embracing them, unless there are clear and sufficient expressions to be found in the instrument to shew the contrary. There are none such in ibis contract. After the lapse of nearly two pages from the con. veying pari of the contract, it is found necessary to ascertain, more particularly, how the tille can be conveyed from the Yeisers to the Appellant. That certainly did not relate to the personal subject; to which the Yeisers had no claim. It provides that the real estate shall bo conveyed from Ydser’s representatives to F. Price and M’Mechen, from them to Cumberland D. Williams, and from him to M?Mechen, Purviance and *534 MDowéll, “ in trust to secure the payment aforesaid, and general- “ ly ihe true performance of the agreement on the part of Cumber- “ land D. Williams.” It is argued that this conveyance is not TO C.D. Willi a ns ; and that, as the personal property., as well as the real, is conveyed to him by the first part of the contract, that is only covered by this general expression.
In addition to the remark, that it requires more than a general and ambiguous expression to subject personal property of this kind to a lien like the present. It is here to be retn-rked, that naturally this expression, “ conveyed to him as aforesaid,” refers to the conveyance from the Yeisers, (the last antecedent.) and, especially, when it is, at the same time, provided that the land thereby conveyed should be placed in the hands of trustees as before mentioned, to secure the payment of Ihe purchase money. This, then, it would seem, was the pledge provided; and I rather think these two circumstances, and especially the last, which defines the land as the security for the ¡jurebase money, would turn the scale in confining the lieu to the real, in exclusion of the personal subject. It cannot be justly said that the personal fund is included, because the real one is insufficient. Exclusive of the difficulties, unavoidably arising from comprehending the personal fund, under the vagueness of this contract as relating to it, the parlies were the proper judges of the sufficiency of the real .fund. It is competent to a party to agree to rely on even an incompetent fund: hut, in this case, it is not shewn, as at the date of the contract, that it was incompetent; and the Appellee might justly have counted on the improvements, which he believed the Appellant would have placed, (and which he alleges he did place) upon the same.
If this view of the subject is correct; if the personal goods are not embraced by the lien; and if the consent of the Appellant. has only been expressed that they should be bound, so far as they were on hand at the time of his offer to restore them, it would seem that we go full far enough in subjecting him to make good, such as were lost by his wilful default and misconduct.
If these goods were at all intended to be subject to restoration, by the contract, they were not the identical goods; for *535 ■diey bad ¡x'tsbed by time, and were consumed or worked up from the raw material. It v«;.s not the amount thereof, which was to be restored; for thpre is no sncli stipulation in the contract, and there was no inventory thereof taken; a measure of great importance in that view. If the personal goods were at all intended, it could only be in this sense, that, as the Appellant rec< ived, with the works, all the floating articles necessary to carry them on, and all the slock then on hand, so, in the event of a restoration, the Appellant’s stock on hand of the same articles, should be forthcoming to the Appellee. There was a confidence existing between the parties, (admitting that the contract embraced the personal goods,) that the Appellant would not diminish the fund ; a breach of which confidence, however, by any gross default on his part, would subject him to a reparation in damages. This confidence might well have been placed in the Appellant. He had this manufacture much at heart on an extended scale; and was, besides, owner of another fourth part of these woiks, and could not have destroyed the interest of the Appellant in the persona! subject, without at the same time destroying his own. So, too, this view, in event, would have been beneficial to the Appellee: in giving him more of the articles of this class than he conveyed to the Appellant. The Appellant might have placed on the premises more of these articles, than he received; and it is only by losing sight of the ideas of the parties at the date of the contract, by attending to posterior facts resulting from imperfect and unfinished reports, that we can infer the contrary. The true rule in expounding contracts, as well as Wills, Is, to keep an eye upon the instrument and the state of tilings as at the date thereof exclusion of posterior ©vents or circumstances.
But it'is supposed that the Appellant is personally responsible, to the amount of the goods conveyed, notwithstanding the express stipulaiion in (he agreement to the contrary ; from tbe negative clause therein, that he shall he ho farther bound than “ the said property so as aforesaid conveyed to him will extend.” This negative way of creating, a charge is rather novel. In addition to other answers to this Idea, inferrable from what I have already said, this argument proves too much. Taken strictly, it would prove that there should be no fund at *536 all for this payment, as far as the perishable goods may have disappeared; although abundant goods of the same character were still on the premises: and if it is meant that the same amount of the goods shall be liable, I answer; 1st, That this is not provided for in the contract; and 2dly, That this idea is in conflict with the provision, which confines the lien to the property “ so as aforesaid conveyed ;” a provision which wholly excludes all articles afterwards acquired. This is a dilemma, from which the Appellee can only escape by agreeing that the lien extends to the real subject only, or that it only extends to the personal subject under the view, the Court is disposed Jo take of it; namely, the continued personal fund in the hands of the Appellant at the time in question, subject to reparation for injuries as aforesaid. This measure of relief I am willing to give to the Appellee; and it is more than I would have consented to have given him, had it not been for the seeming consent of the Appellant.
I will here remark, that this idea of the worthy Judge is in utter collision with the prayer of the Appellee’s bill. He best knew the extent of his own rights; and, in his bill, he only claimed that “ the real property, sold to the Appellant by the “ articles of March 13th, 1807, and so much of the personal “ property as remained,” might be sold : he does not require that such of the articles, as he delivered to the Appellant, and were not on hand, should be found and delivered to him, as forming a part of this fund; a claim that would have equally existed for him, under the Judges construction of the contract.
These are the remarks I have thought it proper to add s for the rest of ray opinion, I refer, as aforesaid, to the Decree which is to be delivered.
The President, on the 29th of March, 1817, delivered the following as the Opinion and Decree of the Court.
The Court is of opinion, that, in making the purchase of the property in qwsiioo, by the Appellant from the Appellee, it was competent for him to stipulate, that the purchase money should h>; only paid out of the property purchased, in exoneration of the person and other property of the said Appel *537 lant. That such stipulation may not have been unreasonable in relation to a subject peculiarly uncertain as to its success «nd value; and that the stipulation in question, in the agreement before us, is so clear and explicit to this effect, as to leave no doubt (in exclusion of other testimony) as to the real intention of the parties.
It is further the opinion of the Court, that the Appellant m'iy have been influenced by the consideration of this exemption, in agreeing to give for this property nearly double the sum, for which he had purchased an equal portion of the same interest, from Joseph Williams, not a great while before 5 and that to hold him to the enhanced price, while his claim of exemption should be disregarded, would be irreconcileable as well with the principle of equity, as with the positive terms of his contract. The Court is further of opinion that, while the sum agreed to be given for this property, as well as the time and manner of payment, is fixed by the contract; and while the Appellant stands exonerated from personal responsibility, as aforesaid, the property subjected to the lien, in lieu thereof is to be considered as a pledge ; as liable to raise, by sale, all the sum due, or so much thereof, as it may be adequate to produce 5 and that the balance thereof, if any, should enure to the benefit of the Appellant.
'While this principle ia admitted, it follows, that the Appellant, in the event of his inability to comply with his contract for the payment of the purchase money, may relinquish his eventual interest in the balance as aforesaid, and give up, in absolute properly, to his Creditor, the whole of the pledged subject, and thereby exonerate himself from the payment of the Debt: such Creditor having no right to complain, that, instead of having a right to charge the subject, to pay his debt, that subject is given up to him hi absolute property.
The Court is further of opinion that, if, (as the case is in the present instance,) the conveyance of the property pledged, or a part thereof, has not been completed in favour of the Appellant, it would be unnecessary, and improper, in the event of such surrender, to go on and perfect the same ; but that, instead thereof, the contract for such conveyance should stand annulled; and that there is no necessity, in such ease, *538 to convey the property to the Appellant, merely that fee might re convey it to the Appellee ; nor is there any necessity, in such case, to charge the property by the process of any Court; but, the debt being discharged by the delivery of the pledged property, it may be used, or sold, by the Creditor, at his discretion.
In ascertaining what is the. true subject, oppignorated in the preS'-nt instance, the Court cannot but see, that, while apt and appropriate expressions are used in the Deed to convey to the Appellant, as well the personal subject, appertaining to the Furnace, as the Furnace itself, and the Land, o a which it is erected, there are no words of the former character found in that part of the contract, which created the 'pledges, and that, taken on the contract merely, if is, at least, somewhat doubtful whether the personal subject is thereby embraced or not. Nor does the Court see that it can look into the testimony in relation to the intention of the parties, as to this particular, without infringing the settled rules for expounding contracts; nor that it ought to hold the Appellant bound by the admission, that the personal subject is embraced by the contract, contained in his letter of the 1 7th December 1808?, as the offer therein made tended to a compromise, and was not accepted.
The Court is also of opinion that, although personal, and even transitory, and fluctuating property, may he made the subject of a Urn, at the pleasure of the contracting parties, it should seem that explicit words should be used to effect such pumose? the want of which, in the case before us, is another circumstance, making it at least doubtful whether the personal subject is comprehended as a part of the pledge, or not.
While these circumstances are borne in mind by the Court, it is deemed a liberal course (o allow' that the personal subject is embraced by Ihe contract in this case, as well as the real.
This construction- is only admitted, because it seems just, (especially,in a case, in which a personal exemption has been stipulated,) that the property purchased should be considered liable for the debt? and because the parties themselves seem, in several instances, to have expounded the contract in this sense. But this concession, in the opirtiotj of the Court, goes far enough. We ought not to go further, and view a personal *539 and perishable subject, as if it were a real one. We ought not to make the same construction in relation to n fluctuating, transitory and perishable property, as if it were permanent.
Although the terms of the contract are general, that the “ property, agreed to he conveyed” to the Appellant, shall be held liable to discharge the debt, it is not to be construed so strictly, as that the personal property shall be embargoed and tied up from use; nor that, in the case before us, even the same kind and amount of property, shall be forthcoming in future, as the pbdge.
In the case before us, the personal subject consisted of perishable articles, provisions, and articles of consumption, raw materials, which were to be worked up, implements necessary for the Furnace, and horses, waggons, &c. The idea, that the same identical articles were to be restored, is refuted by their nature and properties as aforesaid. Nor can we consider that the same amount is to be restored, on any other hypothesis, than that the Appellant is the insurer against the accidents to which this property is so liable. That idea is also refuted by the consideration that no stipulation lo that effect is inserted ; and because no inventory of the kinds and value of the property was taken. The true solution is, that, as a common fund of these articles was received by the Appellant, with the works, the fund, which he should leave of the same articles, should be restored by him, and considered as the pledge.
There was a confidence that the Appellant would not dilapidate and waste this property unnecessarily ; both because it was necessary to carrying on the manufacture, which he had so much at heart, on an extended scale, and because he was under the further check, that he could not destroy the Appellee’s portion of the articles, without, at the same time, destroying his own.
If, however, these checks were not sufficient, we are willing to go further, and subject the Appellant, by an issue of quantum damnificólas, to make good all the waste of the personal property pledged, which arose from his fraud, wilful default or misconduct.
Pursuing these principles, the Court is of opinion that the personal property on hand, at the time of the offer to return it aB aforesaid, as well as the debts then due to the concern., *540 should be considered, as the subject offered to be returned, (iii addition to the real property,) and subject to the condition just mentioned. At that time a serious and explicit offer of this property was made, and refused by the Appellee. It was no longer incumbent on the Appellant to keep the W'orks, or to keep the property together: and, if such property has been since destroyed, or dispersed, it is the Appellee’s misfortune ; but the property, that remains, is not exempted from the lien. Further than that, we cannot go, without compelling the Appellant to insure the property, after he had elected to restore it; and, as to liability for damage in the cases above mentioned, the Court supposes they have gone far enough, especially fn a Court of Equity, when it is considered that he is not to be allowed for valuable improvements, which he may have (and which he alleges he has) placed upon the premises.
The Court is also of opinion, that there is nothing in t,he alleged objection that the Appellant had disqualified himself from delivering up the fledge in question.
As to the Mortgage to his brothers, it may not,perhaps, cover the property in question ; but, if it did, that Mortgage had no existence at the time of the offer aforesaid. With respect to the alleged impediment of the lease, the objection comes with a bad grace from a plaintiff in a Court of Equity, seeking for a specific performance of a contract, and who has not performed his contract; a plaintiff, too, who, for several years, has wholly omitted to procure for the Appellant a title to the premises, or the estate contracted for. The want of this Title may have abridged the Appellant in his full use of the property, arising from the hazard of placing expensive improvements on property, from which, probably, he might be thereafter evicted. So, this want of title may have disabled the Appellant from selling the premises, (as many are willing to buy a legal, though not an equitable title,) and, by so selling, from paying the purchase money with the proceeds.
The Court is of opinion, therefore; that the Appellee has not entitled himself to make the objection in this instance: an objection, too, which, in a Court of Equity, subjects the Appellant to a heavy forfeiture. On the other hand, the Court is of opinion that the Appellant, by making the lease in question, has not disabled himself from substantially per *541 forming that condition. Had the offer of the Appellant been accepted by the Appellee, he might, for any thing appearing to the contrary, have obtained the instant possession of the property from Joseph Williams: and, if not, he could, under the terms of his lease, have obtained in a short time.
It would be highly inequitable, while the Appellee had failed, for years, to execute this contract, on his part, to compel the Appellant to occupy the premises in person, which must be the case, if he is interdicted from leasing it$ nor is it to be forgotten, that this lease contains beneficial stipulations for the Appellee, in relation to the safety of the property leased.
On the whole the Court is of opinion, that the Decree he reversed with costs: and the Court, proceeding to make such Decree, as the said Superior Court ought to have rendered, it is decreed and ordered, that the Appellee may, under the direction of the Court of Chancery, have it ascertained what were ibe kinds, qualities and numbers of the personal property agreed to be conveyed by the contract aforesaid, and which were on hand, at the Furnace, and Belvedere Forge, on the 17th of December 1808, and that all these several articles of property shall be decreed to be delivered up to the Appellee, as his absolute property, subject to the just claims of others : that an account be taken of the sums, due to the partnership* aforesaid, on the said day, including that, alleged to be due from the Yiisers, (who for this purpose may be proceeded against in this suit: and that, Prices' proportions of such sums be considered as due to, and recoverable by him: that the Appellee’s one fourth of all sums of the said debts, received by the Appellant, Price, the day aforesaid, so far as they exceed payments made by him, on account of the concerns, or by any person for him, since the date aforesaid, be refunded to the Appellee by the Appellant, and he and his estate be held responsible therefor: that his one fourth of all rents* due for the premises by Joseph Williams, or others, after the date aforesaid, and now unpaid, be paid to the Appellee, and such as may have been received by the Appellant since that day be refunded by him, and he, and his estate, be also held liable therefor: that the Appellee shall have the benefit of the Covenants, on the part of Joseph Williams, contained in his lease from Cumberland D. Williams ; and especially that *542 for preserving, and restoring the personal property thereby conveyed; which the Court supposes nuy remedy much of the Appellee’s complaint, respecting the waste and dispersion of the said property: that an issue, or issues, be directed, if required, to inquire into any losses, or di,mge, done to the personal fund'aforesaid, through the fraud, wilful default, or misconduct of the Appellant, prior to the said 17th day of December, 1803; and that the same be also recoverable from the said Appellant, his estate, and effects; and that the Appellee be decreed to release to the Appellant the sum, or sums, due under his Contract. And the cause is remanded to the said Superior Court of Chancery, to be proceeded in, agreeably to the principles of this Decree.

 5 Viner. 221, 223, 224, pls. 1, 2, 3, 4, 8, 11, 12, 13, Sir Anthony Main's case, 5 Co. 21.