Mrs. Birdsong:, a widow, being: entitled to several slaves as her dower in the estate of her former husband, and to some furniture in her own right, and being about to marry John M. Jeffries, who was known to be very much in debt, was very desirous to have her property conveyed to her own separate use and benefit, and protected from all liability to the payment of the debts of her intended husband. Jeffries was utterly opposed to becoming a party to any marriage settlement, but declared his entire willingness that she should make any disposition of her property that she and her friends might desire. Nathaniel D. Land, one of the brothers of Mrs. Birdsong, on whom she relied for taking such measures as might be necessary for effectuating her wishes, in relation to her property, confiding in the integrity and skill of Jef-fries, the intended husband, (who was a lawyer by profession,) consulted him on the occasion; and he advised the execution of an absolute conveyance of the property to John W. Land, another brother of Mrs. Birdsong, who was then absent in *the military service of the State. Such a conveyance was accordingly drawn by Jef-fries himself, and executed by Mrs. Birdsong, in the presence of many persons, on the day of the marriage, and probably not an hour before the marriage. The property, after the marriage, passed into the possession of Jeffries until the return of Land, which seems to have been shortly afterwards, when it was hired by Land to Jeffries, for one year ; and he continued to hold it, afterwards, on the same terms, until some of the slaves were taken in execution, by Charles W. Steward, a creditor of Jeffries. John W. Land, the grantee, in the deed executed by Mrs. Jeffries, as aforesaid, presented, as her next friend and trustee, to the Chancellor of the Richmond District, a bill of injunction, stating the above circumstances, and particularly, that the object of the conveyance was to secure the property to the separate use of Mrs. Jeffries, free from the claims of the creditors of Jeffries. The injunction was awarded, and afterwards dissolved by the Chancellor.
The question is as to , the validity of the deed from Mrs. Birdsong to her brother John W. Land.
The statute of frauds, (under which it is contended that the deed is void,) is merely declaratory of the common law, and vacates no conveyance, unless it shall appear to have been executed with intent to delay, hinder or defraud creditors or subsequent purchasers ; for, as Lord Mansfield said, in Cadogan and Kennet, Cowper, 434, “that statute does not militate against any transaction, bona fide, and where there is no imagination of fraud; and so is the common law.”
The burden of proving the fraudulent intent, is on him who seeks to vacate the conveyance. But, he will be allowed to establish it by any kind of legal testimony ; whether it be direct and positive, or presumptive or circumstantial.
In.the absence of direct and positive testimony, there are many facts and circumstances which the law admits to *be marks or signs of fraud; and from which, therefore, the fraudulent intent may be inferred. Some of these circumstances afford only prima facie evidence of it; but others afford conclusive evidence, and establish it decisively.
There are some cases where the conveyance is said to be fraudulent in law, and others where it is said to be fraudulent in fact.
A conveyance is said to be fraudulent in law, when it has been executed under such circumstances, that the law itself conclusively infers a fraudulent intent, from the intrinsic nature of the circumstances, without any enquiry into the actual intent of the parties to the transaction. A conveyance is said to be fraudulent in fact, where the circumstances are not such as that the law conclusively infers a fraudulent intent from them, but where the parties have actually intended to delay, hinder or defraud creditors or subsequent purchasers. But, both descriptions of cases are equally void under the statute of fraud; for, in the first, the fraudulent intent is inferred by the law, and in the second it is actually proved.
It is contended for the appellee, Steward, that the conveyance, in this case, is fraudulent in law, because, the possession did not accompany and follow the deed.
Before I examine the character of the possession in this particular case, and the weight to which it is entitled, I deem it important to state, as concisely as I can, my views of the doctrines of the'law on the subject of the possession of personal property, in general, after an absolute conveyance of them. I deem it important, because I conceive that' the decision of this case will depend mainly upon the correct understanding of these doctrines.
I will premise that I have not been able to discover, any contrariety or inconsistency in the modern decisions of the English Courts, *511 or in the opinions of their Judges on this subject. There is certainly no such contrariety nor inconsistency to be discovered in the Supreme Court of the United States, or in this Court. If there be the appearance of ^contrariety or inconsistency of opinion, that appearance will vanish, if the expressions of the Judges shall be construed, ¡as they always ought to be) in reference to the circumstances of the particular case, and to the points presented for decision. i
The only real question that has ever been submitted to the Courts, on this subject, is whether a possession not accompanying and following the deed, is to be considered as only a badge or evidence of fraud, to be submitted to the jury, under the direction of the Court, and, of course, liable to be rebutted by counter-testimony, or whether it is to be considered “such a circumstance per se, as makes the transaction fraudulent in point of law.”
But, that question does not, by any means, involve any doubt as to the effect of the mere circumstance of actual possession not passing from the grantor, cotemporaneously with the execution of the conveyance; nor as to the effect of the mere circumstance of such possession being found in his hands after-wards. No body ever pretended that either of these, was such a circumstance, per se, as makes the transaction fraudulent in law. Every body admits that the mere possession of personal property, after an absolute conveyance, is only evidence of fraud, to be submitted to the jury, and that it is only prima facie evidence. This is expressly stated by Lord Eldon, in Eady Arundel v. Phipps, 10 Ves.'144. He says, “the mere circumstance of possession of chattels, however familiar it may be to say that it proves fraud, amounts to no more than that it is prima facie evidence of property in the man possessing, until a title, not fraudulent, is shewn, under which that possession has followed. Every case from Twyne’s Case downwards supports that.” Being only prima facie evidence of fraud, it must, from its very nature, be liable to be rebutted by other testimony, (1 Starkie’s Evidence, 4S3,) and consequently, the possession of the vendor is susceptible of explanation, as to its character, for the purpose freeing it from the imputation of fraud. Many *cases might be stated as examples, for shewing the operation of this principle ; but a single one will suffice. A man purchases a slave of another, for full consideration, and bona fide; the slave at the time of the sale, is on the farm of the vendor ; it is the expectation and intention of both parties that he shall be removed with all reasonable despatch; and he remains, in the mean time, in the possession of the vendor, without any regard to his convenience, but solely 1o await the reasonable convenience of the vendee in removing him. But, before the vendee can thus remove him, an execution comes out against the goods and chattels of the vendor, and the sheriff finding the slave in his possession, levies the execution upon him and sells him. In an action of trespass brought by the vendee against the sheriff, if the vendee exhibits nothing but his absolute bill of sale, the sheriff may shew that notwithstanding that bill of sale, the slave was found by him in the vendor’s possession. Now, as the possession of personal chattels is, prima facie, evidence of property in, or of trust for, the person possessing, the possession of the vendor, thus exhibited, would be prima facie, inconsistent with the avowed object of the absolute conveyance to the vendee, and would, therefore, be priijia facie evidence of a trust for the vendor, and that the absolute conveyance was intended as a cover to disguise and conceal that trust, and thereby to delay, hinder and defraud ■creditors, &c. But still, this would be prima facie evidence only, liable to be rebutted by other testimony. If, therefore, the vendee shall prove that the possession of the vendor was connected with no motive of benefit or advantage to the vendor, but was for the reasonable convenience of the vendee only, and was intended to continue no longer than such reasonable convenience required, all presumption of property in the vendor, or of trust for him,is done away, and consequently, the possession of the vendor is shewn not to be inconsistent with the purpose of the absolute deed ; and thus, the whole foundation for the inference of fraud, would be removed. *But, suppose the sheriff should not only prove that the slave was found in the actual possession of the vendor, but that it was agreed between the vendor and vendee, at the time of the conveyance, that the slave should remain in the possession of the vendor, for a long or a short time, to he used by him, during that time, as if he were the owner. Such a possession by the vendor would be manifestly inconsistent with the deed ; for, the deed purports to be for the sole and exclusive benefit of the vendee, whereas the possession, as explained by the agreement, shews a trust for the benefit of the vendor. Or, suppose there be no agreement expressly proved, that the slave shall remain with the vendor to be used by him as if he were the owner, yet if the slave be actually found in his possession and use, after the conveyance, or if he be found in his possession only, that is (as has been already said) prima facie evidence of property in, or of trust for the vendor, inconsistent with the deed; and although, as being prima facie evidence only, it is liable to be rebutted by other evidence shewing that the possession is not inconsistent with the deed, yet if there be no such rebutting testimony, the prima facie evidence acquires, thereby, “a conclusive quality,” (1 Starkie, 454,) and proves the fact it purports to prove, the inconsistency of the possession, as decisively as if there had been an express agreement that the slave should remain in the possession and use of the vendor.
This inconsistency of possession is all that is meant, when it is said that possession does not “accompany and follow the deed and the only question that has ever been made upon the subject, is whether such inconsistent possession be only evidence of fraud, to be submitted to a jury, and liable to be rebutted by other testimony, or whether it be “such a circumstance per se, as makes the transaction fraudulent in law.”
In some cases, the inference of fraud is a mere question of fact ; and being a question of fact, can only be found by *a jury. It is always so, when the *512 fraud depends, not on the mere act done, but on the intention with which it was done. As, for example, when a debtor assigns his property for valuable consideration, and delivers possession thereof ;-this will be fraudulent or otherwise, according to the intention with which.it was done: and that can be ascertained by a jury only. 1 Starkie, 427 ; 2 Starkie, 616.
But, there are other cases in which the inference of fraud, is a mere question of law. And it is always so, when the act itself is deemed fraudulent, without regard to the particular intention with which it was done. 1 Starkie, 427 ; 2 Starkie,616. In such cases, the inference of fraud is pronounced by the Court as a matter of law arising from the fact as found by a jury, agreed by the parties, or admitted by the pleadings ; or, if the Court perceive that the testimony tends to establish a fact which the law deems fraudulent per se, the Court may instruct the jury that, if they accredit the evidence, they should find accordingly.
The case of possession by the vendor, inconsistent with the conveyance, presents one of the strongest instances of the inference of fraud being a question of law. Mere possession may be explained ; and the presumption arising from mere possession, will be removed by an explanation shewing that the possession was not inconsistent with the conveyance. But, a possession, admitted or proved to be inconsistent with the conveyance, admits of no explanation, nor can the inference from it be repelled or rebutted by even the strongest testimony of the actual fairness of the intention of the parties; for, an inconsistent possession is, in the language of Judge Buller, (in Edwards v. Harben, 2 Term Reports, 596,) “such a circumstance per se, as renders the transaction fraudulent in point of law.” The rule is not always declared, precisely in this form ; for the same Judge laid down the rule, in different language, in the case of Haseling-ton v. Gill, decided a few years before Edwards and Harben, and reported in a note to Jarman *v. Woolloton, 3 Term Reports, 620. He there expresses himself thus : “It has been frequently determined that possession alone is not evidence of fraud The transaction must be shewn to be fraudulent from other circumstances. If the possession be inconsistent with the conveyance, that is evidence of fraud ” But it is manifest, that Judge Buller did not mean that it was only prima facie evidence of fraud; for, that would have been directly contrary to the former decisions to which he himself refers in Edwards v. Harben, and to the unanimous opinion of all the Judges of England as declared in consultation on the case of Bamford v. Baron, 2 Term Reports, 594, (note.) He undoubtedly meant that an inconsistent possession is conclusive evidence of fraud. And there is, in truth, no difference between a transaction being, in law, per se, fraudulent, and its being, in law, conclusive evidence of fraud. The expressions are used, in the books, as synonimous.
The rule, as thus established in England, has been sanctioned by the Supreme Court of the United States, in the case of Hamilton v. Russell, 1 Cranch, 309 ; and by this Court, in the case of Alexander v. Deneal, 2 Munf. 341; Robertson v. Ewell, 3 Munf. 1 ; Thomas v. Soaper, 5 Munf. 528; and Williamson v. Earley, Gilmer, 15.
This doctrine of fraud per se, as it is usually called, or of conclusive evidence of fraud, as it is sometimes called, excludes all regard to the actual intention of the parties, in every transaction that comes within its range. Hence it frequently happens, that conveyances are vacated as fraudulent in law, under this rule, when the parties had not, in fact, any fraudulent or co-vin ous intent whatever. The case of Edwards v. Harben, (in which the rule was most emphatically laid down) was, itself, a case of that kind. The parties had, in fact, “no imagination of frauds ; ” for, the deed was intended merely as a security for a just debt, and the possession was not to remain with the vendor more than 14 days. The case of Williamson v. Earley, *in this Court, (Gilmer, 15,) is, also, a very strong one of the same kind. There, the bill of sale of slaves was absolute on its face, and it was intended by the parties to be what it purported to be, an absolute sale. Valuable and full consideration was actually paid. The slaves were brought into the presence of the parties, at the time of the execution of the bill of sale, and the vendor told the ven-dee that they were his to do as he pleased with them. But at the same time and place, the vendee hired them to the vendor, for one ■year, for their food and clothing; and took a bond for returning them at the end of the year. The vendee took them out of the possession of the vendor in less than two months from the execution of the conveyance. Yet, this Court determined it to be a case of fraud per se. Nothing was farther from the minds of the parties in Edwards v. Harben, and in Williamson v. Earley, than an actual intention to delay, hinder or defraud creditors. But, in both cases, they intended and stipulated, that the vendor should remain in the possession and use of the property. In doing so, they did an act which the law, estimating it by its intrinsic nature, declares to be fraudulent per se ; and as the law infers intention from acts, it infers conclusively that the intention of the parties was fraudulent ; and vacates the transaction accordingly.
Such being the inflexible rigour with which the rule of fraud per se, is applied to all cases coming within its range, I think it very important that the limits of the rule should be most clearly defined ; and although I approve of the rule, I do not think it ought to be extended to cases which do not strictly belong to it.
The rule itself, the principle on which it is ‘founded, and the extent of its application, are laid, down, with admirable perspicuity and force, by Judge Buller, in Edwards v. Harben. It is applied only to cases where possession does not “follow and accompany the deed;” or as he himself explains it, both in Edwards v. Harben, and in Haselington and Gill, it is applied only to cases where the possession *is inconsistent with the deed. Inconsistency of possession is the principle, the foundation of the rule, and the test of its application. Wherever the *513 possession is inconsistent with the conveyance, the rule applies to and vacates the transaction. Wherever the possession is inconsistent with the conveyance, or, to speak more correctly, wherever the possession is not inconsistent with the conveyance the rale does not apply ; and the transaction will be supported, unless it shall appear that the intention of the parties was actually fraudulent. Thus, in Edwards v. Harben ; Bamford v. Baron ; Hamilton v. Russell; Alexander v. Deneal ; Robertson v. Ewell; Thomas v. Soaper, and Williamson v. Earley, (before cited) the transactions were held to be fraudulent per se, because the possession was inconsistent with the conveyance ; there being proof either that there was an actual agreement that the vendor should remain in the possession and use of the property, or that he was permitted to remain in the possession without any proof to shew that the possession was not inconsistent with the conveyance. But in Cadogan v. Kennet, Cowper, 432; Jarman v. Woolloton, 3 Term Rep. 618 ; Haselington v. Gill, (reported in a note to Jarman v. Woolloton, ) and in Lady Arundel v. Phipps 10 Ves. 139 ; the transactions were supported because the possession was not inconsistent with the deed. The cases of Cadogan v. Kennet, and Lady Arundel v. Phipps, shew that although the actual possession remain with the vendor in the same manner as if the deed had never been made, yet the act will not vitiate the deed, provided the transaction be free from actual fraud, and provided such possession be not inconsistent with the deed. In the first of these two cases, a husband before marriage, conveyed certain household goods belonging to him, at his house in town, to trustees for his own use during his life, remainder to his wife for her life, &c. The marriage took place, and the husband remained in possession as if the deed had not been made. It appeared in testimony that the fortune of the lady he *was to marry was amply sufficient to pay all the debts he owed at that time, and that he had no idea of disappointing any creditor. It was held that as the possession by the husband was consistent with the deed, and as the transaction was exempt from all suspicion of actual fraud, the deed protected the property from sale, even during the lite of the husband, for the satisfaction of a debt due even at the time of the settlement. In Lady Arundel v. Phipps, there was a purchase by a married woman, after marriage, from her husband, through the medium of trustees, for her separate use, of certain family pictures, furniture and other articles belonging to the husband, in and about his different mansion houses. The husband continued in the actual possession of the property, after the execution of the deed, in the same manner as if the deed had not been made; and it appeared, moreover, that the object of the purchase was to preserve from the creditors of the husband, and for the family, the property embraced by the purchase, which was of peculiar value to the family. This transaction was supported, because the evidence shewed it to be fair, and because the possession of the ■ husband (considering his relation to his wife,) was not inconsistent with the deed conveying the property to her separate use. The case of Jarman v. Woolloton, &c., was, like the case at bar, the conveyance by a woman just before her marriage, of her own property, with the consent of her intended husband. By the deed, reciting ‘‘that it was agreed between the parties, that the wife’s stock in trade, book debts, &c. should be assigned to a trustee, in trust for her separate use and disposal, and to the intent that she might carry on her trade, at her own risk and charges, and for her own separate and exclusive benefit. She assigned, to a trustee, all and singular her stock in trade, and other effects, at, in or about and belonging to, the apartments then in her occupation, being part of a house No. 78, in Welbeck street, &c.” For some time after the marriage, the wife carried on her trade in Welbeck street, separately from her husband, *who was a linen-draper in Mary-le-bone street; but afterwards, all her effects were removed to his house, and she carried on her trade in a separate apartment there. The husband becoming a bankrupt, the wife’s stock in trade, and her furniture (conveyed by the deed,) were taken possession of by his assignees. The trustee of the wife brought trover against the assignees, and the question was whether the deed protected the property. It appeared on the trial that the husband paid the rent of the house, and had been at the expense of fitting up the shop, but that there was contradictory evidence with respect to the manner of the wife’s carrying on her business, whether for her own separate use or not. The jury found that it was not carried on separately, and gave a verdict for the defendant as to the stock in trade, but found a verdict for the plaintiff as to the furniture. The defendant’s counsel moved to set aside the verdict and grant a new trial as to the furniture, on the ground that the trust deed did not protect this property. But, the verdict was sustained by the Court. The transaction being exempt from all suspicion of actual fraud, the furniture was held to be protected, notwithstanding it had been removed to the husband’s house; for, as to the furniture, the possession of the husband, considering his relation to his wife, was not inconsistent with the deed conveying it to her separate use. But, as to the stock in trade, the deed, by its very terms, required that the wife should carry on the trade separately from her husband, and at her own risk and charges. The fact found by the jury that she did not carry it on separately, was, therefore, in direct opposition to the terms of the deed; and it was on the ground of this inconsistency, that the stock in trade was held to come within the influence of the rule of fraud per se. This is, certainly, a most remarkable case. The different parts of the property belonged to the same person, were conveyed by the same deed, to the same grantee, for the same purposes, and the actual possession, after the deed, was the same as to all the '“'property. Yet the deed was held to protect a part of the property, because *514 the possession as to that was consistent with the terms of the deed, and to be fraudulent per se, as to other parts of the property, because the possession as to them, was inconsistent with the terms of the deed. This shews what is very important in the case at bar, that, as to property, of the wife conveyed, fairly, before the marriage, the circumstance of possession by the husband, after marriage, will not bring it within the rule of fraud per se; unless the possession by the husband shall be inconsistent with the terms of the deed. And I will here take occasion to observe that as to the doctrine of inconsistency of possession, there is no difference between a conveyance to trustees, and a direct conveyance to the party beneficially interested; particularly in England, where deeds of trust are not required to be recorded.
One word more as to this rule of fraud per se, and I shall have done with the subject. It is never applied to cases of possession by the former owner, after a sale of property by a sheriff under an execution ; whether the possession be left by the purchaser with the former owner, merely for his accommodation, or on condition that he will sell the property and pay the proceeds to the purchaser, or on a contract to pay rent or hire for them. Kidd v. Rawlinson, 2 Bos. & Pul. 59; Cole v. Davies, 1 Ld. Raym. 724; Birch v. Alexander, 4 Taunton, 823. Nor is it material in such cases, that the purchaser be or be not a creditor. Nor is the rule of fraud per se, applied to the case of possession by the former owner, after a sale made by trustees under an assignment for the benefit of creditors. Leonard v. Baker, 1 M. & S. 251. Nor is it applied to the possession of the former owner, after a sale by a landlord on a distress for rent.'- Guthrie v. Wood, 1 Starkie’s Cases, 367; 2 Com. Law Reports, 430. In this last case, Lord Ellenborough said, “the doctrine of possession,” (meaning this doctrine of fraud per se,) “applies to cases of conveyance from the party himself. *The statute of Elizabeth does not apply to a case like this, where the property is not sold by the party, but under a distress for rent.” And how can it apply to any other case than to a conveyance from the party himself? For, how can a possession by the former owner, be inconsistent with a conveyance not from that former owner, but from some other person in whom the property has become legally vested, and who has full right to sell and convey to any fair purchaser. Such a purchaser is, as Lord Ellenborough said, in the case last cited, “quite at liberty to leave it in the possession of the former owner. ”
The result of the whole doctrine is this, that the mere possession of personal chattels, after an absolute conveyance of them, being only prima facie evidence of fraud, may be explained and rebutted by shewing that it is not inconsistent with the conveyance. But, if the possession be inconsistent with the conveyance, it is per se fraudulent in law, although the parties had not, in fact, any imagination of fraud. This rule, however, is never applied to any case but to one of inconsistent possession. It remains now to apply these general principles to the case before us.
The deed from Mrs. Birdsong to her brother, was executed but a few hours, perhaps a few minutes, before her marriage; and it conveyed the property to him, absolutely, without any special stipulation, limitation, or reservation whatever. No possession of the property, therefore, .embraced by this deed, can be inconsistent with the deed, but the possession of Mrs. Birdsong, or of those claiming under her. As to the possession of Mrs. Birdsong, herself, during the short period that elapsed between the execution of the deed, and the solemnization of the marriage, that is sufficiently explained to be not inconsistent with the deed, by the fact that there was no agreement that she should retain the possession, and by the fact that her brother, the grantee, was absent, and was not informed of the deed until after the marriage. As to the possession of * Jef-fries, after the marriage, that cannot, with any semblance of propriety, be said to be a possession under Mrs. Birdsong, the grantor. She had no right whatever, to the possession of the property, at the time of the marriage, nor had she the legal competency after the marriage, to deliver to him any actual possession which she may have held at the moment of the marriage; for, at that moment, she ceased to-be sui juris. The possession of Jeffries after the marriage, was not, either as to right, or as to fact, under the grantor in the deed: and consequently, can no more be said to be inconsistent with that deed, than the possession by any other individual in the community. In truth, the possession of Jeffries, after Land’s return from the military service, was under Land, the grantee in the deed, by hire from him, and so far from being inconsistent with the deed, was consistent with it. This case is very different from the case of Jarman v. Woolloton, so far as respects the interference of the husband in the wile’s stock in trade, mentioned in that case. In Jarman v. Woollo-ton, there was an express stipulation in the deed, that the wife should carry on the trade separately from the husband. The interference of the husband in the trade, (which was acquiesced in by the wife and by her trustee,) was, therefore, inconsistent with this express stipulation of the deed: and it was on account of this inconsistency, that that case was determined, so far as related to the stock in trade, to come within the influence of the rule of fraud per se; and that also was the reason, and the only reason, why Lord Mansfield said, in the case of Haselington v. Gill, that if “the husband had carried on th,e trade in his own name, and contracted debts on it, that would have varied the case:” for, in Haselington v. Gill, as in Jarman v. Woolloton. there was an express stipulation in the deed that the trade should be carried on by the wife, separately from the husband. The mere circumstance of possession by the husband, is never regarded as fraudulent per se. It is only inconsistent possession, whether by the *husband or any body else, that is regarded as fraudulent per se. *515 And X pronounce with confidence, that there is no case, where the possession of the husband after marriage, of property conveyed by the wife before marriage, has been held to be inconsistent with the deed of the wife, where that deed, like the deed before us, .was absolute on its face, and without any special stipulation, limitation, or reservation. This case, therefore, cannot be brought within the influence of the rule of fraud per se; and can only be assailed on the ground of actual fraud.
Was there any actual fraud in this transaction? This was very faintly urged, if urged at all; and I am decidedly of opinion, that it is not supportd by a single circumstance that is calculated to excite even the suspicion of fraud. Mrs. Birdsong,. not being indebted herself, had a perfect right to make any disposition of her property that she thought proper; and she was under no obligation, legal or moral, to permit any of it to be applied to the pay’ment of the debts of her intended husband. Nor was Jeffries himself, under any such obligation, to make any arrangement for subjecting to the payment of his debts, the property of his intended wife. Situated as he was, such an effort would have been reprehensible: and even his creditors do not exhibit themselves in a very enviable aspect, when, after imprudently trusting an insolvent, they seek to indemnify themselves by sacrificing the just rights of others. As to the possession of the property by the husband, it was no more calculated to mislead or deceive creditors or purchasers, than the case which occurs daily, of the wealthy father-in-law permitting his son-in-law, to hold on loan, property which appears to the world to belong to the son-in-law, but which may be reclaimed at any time within five years. As to the use to which it was hoped the brother would hold the property, viz: the separate use of Mrs. Birdsong, after the marriage, that was in itself a just and legal object; and no body had a right to complain o fits not being expressed in the deed, but Mrs. Birdsong *herself. And the omission is of no consequence, even as to her; since the grantee himself, now declares it.
On the subject of the deed not having been recorded, I have only to say, that as it was absolute on its face, without any reservation of trust whatever, it cannot be regarded as a deed of trust, or marriage settlement; and therefore, that there was no necessity for recording it as to anybody, under the 4th section of our act concerning conveyances. Nor do I think it was necessary to record it under our statute of frauds; because I am of opinion that the possession really and bona fide remained with the donee; for, the possession of Jeffries, was the possession of Land.
I think the decree of the Chancery Court should be reversed, and the injunction be re-instated.