Brockenbrough, J.
I am of opinion, that there was error in the court’s refusing to instruct the jury, that the action could not be maintained, by reason of the bill of sale set forth in the third bill of exceptions. The action brought was an action in case. The first count was on the deceit in the sale; the second count was obviously intended to be on the warranty of title. The parol contract of the sale, was clearly merged in the contract under seal, if the sale charged in the second count was the same with that evidenced by the bill of sale. Although the bill of exceptions is badly drawn, yet I think it appears, clearly enough, that the subject of sale was the same. The plaintiff had offered the bill of sale in evidence to support his action; thereby affirming, that although the bill of sale conveying the negro boy to the plaintiff, was executed by two persons, namely J. Brown junior, and J. Brown senior, yet it evidenced the same contract set forth by him in his declaration. The defendant properly objected to its going in evidence to the jury, to support the action on the case, and the court properly rejected it; but the deed being before the court, the defendant then said to the court, that as the plaintiff held his covenant, whereby he bound himself (with another) to defend the title to the slave which he had sold him, this action on the case cannot be supported; and therefore, he moved the court so to decide. This is the substance of the bill of exceptions; and as it is clear that an action of covenant ought to have been brought, I am of opinion, that the judgment is erroneous.
I am also of opinion, that the second count is a faulty one, and that the court erred in not instructing the jury to disregard it. Although in an action on a warranty of title to a chattel, it is sufficient proof of the warranty, that the vendor affirmed it to be his, and the action lies *446 on such affirmation, 3 Stark. Law Ev. part 4. p. 1661. Medina v. Stoughton, 1 Salk. 210. yet if the plaintiff does not choose to resort to the appropriate remedy for breach of contract, but sues as for a tort, his count must conform to the nature of the action. Here, the first count is in case for a deceit: the second is certainly not in assumpsit, but in case on the warranty, and in that view is defective. It should have charged, that the defendant, by falsely and fraudulently warranting the slave to be his absolute property, sold him to the plaintiff. The wrong consists in the false warranty; which, therefore, is of the very essence of the charge. 1 Chitt. Plead. 139. 2 Id. 276. Stuart v. Wilkins, 1 Doug. 18. 21. Williamson v. Allison, 2 East 446.
On the question, whether the letters set forth in the first bill of exception were admissible, though I have some doubt, the strong inclination of my mind is, that' they are legal evidence.
But I am for reversing the judgment, for the errors I have mentioned. And as the verdict is for the defendant on the good count, and as the second count ought to have been disregarded as defective, a judgment should now be entered for the defendant.
Carr, J.
The appellee sued the appellant in case, for selling him a negro boy as a slave for life, who was only bound to servitude for a limited term. The first count in the declaration, is for fraud and deceit in the representation and sale, averring the scienter ; the second, for selling the negro boy as an absolute slave, and so representing him, when in truth he had only a limited time to serve, without a further charge of deceit. The points for our consideration, arose from motions to the court, at the trial, for instructions to the jury, and for excluding evidence.
The plaintiff offered to the jury two letters, writtén by the defendant, who objected to their going to the *447 jury, because they were written with a view to a compromise, and that failing, they could not be used to the prejudice of the parly; but the court admitted the letters. As this is a point of some interest in the doctrine of evidence, I have looked a little into the books with respect to it. In Buller’s Ni. Pri. 236. it is said—An admission of a debt, if satisfactorily proved, is the strongest evidence. But an offer to pay money by way of compromise, is not evidence of a debt. The reasons often assigned for it by lord Mansfield were, that it must be permitted to men “ to buy their peace,” without prejudice to them if the offer did not succeed; and such offers are made to stop litigation, without regard to the question whether any thing, or what is due. If.the terms huy their peace are attended to, they will resolve all doubts on this head of evidence: But for an example, I will add one case. If A. sue B. for £ 100. and B. offer to pay him £ 20. it will not be received in evidence ; for this neither admits nor ascertains any debt, and is no more than saying he would give ¿£20. to get rid of the action. But if an account consists of ten articles, and B. admits that a particular one is due, it is good evidence for so much. This is a clear and concise view of the point, separating an offer to make a sacrifice or concession for the sake of peace, from the admission of a fact, though made under the same circumstances. Several cases establish the same distinction. Thus, in Waldridge v. Kennison, 1 Esp. Ca. 143. the only evidence to prove the handwriting of a defendant to a bill of exchange, was his admission made, in the course of a treaty for a compromise; and Garrow objected to it as evidence on that ground; but lord Kenyon, while he fully admitted the rule, said, that it did not extend to a distinct fact like this. So, in Gregory v. Howard, 3 Esp. Ca. 113. lord Kenyon, on the same point, said, “ I have often given my opinion on this subject. Evidence of concessions made for the purpose of set *448 tling matters in dispute, I shall never admit; but facts admitted before arbitrators (as this case was), I always will.” Thompson v. Austen, 2 Dowl. & Ryl. 358. 16 Eng. C. L. R. 94. assumpsit for goods sold and delivered, and the general issue pleaded with notice of set-off; the plaintiff having proved a prima facie case of demand on the defendant for goods sold to him to the amount of £ 630. a clerk of defendant’s attorney was called for the purpose of shewing, that in an interview between the clerk and the plaintiff the latter had said, “ he was so anxious to get out of law, that he would refer the question in dispute to the witness as an arbitrator,” and this being declined, added, “ he had received £ 800. on •the defendant’s account, which he meantto set off against some bad debts owing to him from some other persons but as the witness admitted, that he was desired to communicate to the defendant what the plaintiff had said on this occasion, for the purpose of inducing the defendant to agree to a compromise, it was objected for the plaintiff, that the evidence could not be received, and the judge at nisi prius rejected it. A rule was obtained to shew cause why a new trial should not be granted, on the ground that the evidence had been improperly rejected ; and the court was unanimous in granting the new trial. Bayley, J. said, “ It appears to me, that the evidence rejected was not of that nature, which would bring it within the rule on which the objection is founded. The conversation does not seem to have originated in any desire to compromise the dispute between the parties. The essence of an offer to compromise, is, that the party making that offer, is willing to submit to a sacrifice, and to make a concession; but I see no sign of any such inclination expressed, by the plaintiff in the conversation in question.” Wallace v. Small, 1 Mood. & Malk. 444. 22 Eng. C. L. R. 355. assumpsit on a charter party: there was some difficulty in fixing defendants with the contract; but it appeared, that after the *449 action was brought, a specific sum had been offered; and evidence was given on the part of the plaintiffs, that a friend of theirs, in consequence, went to the dofendants and advised them to increase their offer, and that defendants refused to do so, saying “ we shall lose enough by the charter-party as it is.” The witness stated that nothing had been said about this communication being without prejudice. The attorney general objected, that the evidence was inadmissible, because, from the very nature of the transaction, it appears to have been a negotiation for a compromise. Lord Tenter den however admitted it, and said, “he thought it good prima facie evidence of liability. It is not said to be without prejudice, and an offer to compromise may be very well made, without any restriction as to confidence.” There are some american authorities to the same effect. In the Harford Bridge Co. v. Granger, 4 Conn. Rep. 148. Homer, C. J. delivering the opinion of the court, says,—“ The law on this subject has been often misconceived; and it is time that it should be finally established. It is never the intendment of the law to shut out the truth, but to repel any inference which may arise from a proposition made, not with a design to admit the existence of a fact, but merely to buy one’s peace. If an admission however is made, because it is a fact, the evidence to prove it is competent, whatever motive may have prompted the declaration. If A. offer to B. £ 10. in satisfaction of his claim of £ 100. merely to prevent a suit or purchase tranquillity, this implies no admission that any sum is due, and therefore testimony to prove the fact, must be rejected, because it evinces nothing concerning the merits of the controversy. But if A. admits a particular item in an account, or any other fact, meaning to make the admission as being true, this is good evidence, although the object of the conversation was to compromise an existing controversy.” In Fuller v. Hampton, 5 Conn. *450 Rep. 426. the same law is laid down. In Marsh v. Gold, 2 Pick. Rep. 290. Parker, C. J. delivering the opinion 0f the court, says, “ It does not appear from the authorities,.that where parties are treating about a compromise, admissions of particular facts are not to be received in evidence. The general proposition stated in the books is, that an offer to pay money, by way of compromise, to get rid of an action, is not evidence of a debt. If the object be to buy peace, it is plain, such an offer carries with it no evidence of the justice of the demand; and it would have a tendency to prevent amicable adjustments if such offers were to be used against the party making them. But the admission of particular items of account, or the confession of particular facts, independent of an offer to pay, does not bear the same character.” In Gerrish v. Sweetser, 4 Pick. Rep. 376. the rule is laid down with the same force and clearness, by the same chief justice. In our own court, this doctrine has been very little canvassed. I find but two cases where it is touched, Baird v. Rice, 1 Call 18. Williams v. Price, 5 Munf. 507. 538. and there, the general rule is simply announced, without laying down its extent or modifications.
Then, look at the letter of the 6th August 1823—for no question can arise except on that letter; the second letter contains neither proposition, concession nor admission. To my apprehension, that letter does not come within the rule of'exclusion, according to the authorities cited. There was no treaty for a compromise on foot; the letter asked for none ;' proposed no meeting, no arbitrators ; offered no purchase of peace. Butter says, if the terms “ buy their peace” be attended to, they will resolve all doubts on this head of evidence; and Bayleij, J. says, that “the essence of an oiler to compromise, is, that the party making it, is willing to submit to a sacrifice, and to make a concession.” There is no such thing in this letter. The spirit it *451 breathes is wholly different. Brown, having satisfied himself by an inspection of the deed, that the boy Edmond was in all probability the boy therein set free, avers his ignorance oí’ that fact when he sold him, and his wish to do what is just and right, on amicable terms ; and proceeds to give his view of that subject. He thinks that the purchase money is all that is justly due, or interest on it and hires to him,—and either of these, he is willing to agree to. Is there any sacrifice offered here ? any concession ? any thing to buy peace ? Nothing like it; he is willing to do what is just and right, and this he offers; he contemplates no arbitration, no third persons to settle the controversy; for, after stating that he is willing to pay the purchase money alone, or with interest, he being allowed hires, and will pay in the fall, if either alternative meets the vendee’s approbation, he asks to hear his determination as soon as convenient. I do not think then that this letter was either written upon a pending treaty for a compromise, or was meant to propose a compromise, or to state terms to which the writer would submit, or sacrifices or concessions which he was willing to make, “to buy his peace.” But if this were the case, we have seen still, that the distinct facts stated would be evidence. Thus, the writer states as facts that he had seen the deed of emancipation •, that he had sold the boy to the vendee as a slave; his belief that he was entitled to freedom, and his utter ignorance of these things when he sold. Surely, these admissions, according to all the cases, may go to the jury. The rest of the letter is mere opinion, as to the terms on which the matter should be adjusted. I think then that the circuit court was right in admitting the evidence.
As to the other points, I will say but a word. I think the Rockingham record was admissible ; and that is all the circuit court decided. I do not think the court wrong in refusing the third instruction, when we look *452 at the manner in which it was asked. Nor do I think it erred in refusing to instrust the jury, that the purchase money with interest was the true measure of recovery on the second count. But I think it did err, in refusing to instruct the jury to disregard the second count as faulty. I am, therefore, for reversing the judgment; and as the verdict upon the only good count, is for the defendant, we ought to enter judgment for him.
Cabell, J. concurred.
Brooke, J.
The verdict is for the plaintiff on the bad count, and for the defendant on the good count. Therefore, judgment should have been given for the defendant.
Tucker, P.
I am of opinion, upon mature reflection, that the letter first mentioned in the first bilí of exceptions, was not admissible evidence. It is obvious, that it was introduced merely to establish the promise to pay, from which an admission of liability was to be inferred. There is no other admission in the letter. It states, that Brown had received the deed of emancipation, by virtue of which Edmond claimed his freedom, and that it contained a clause of emancipation of a boy, which he supposed to be the boy sold. It disavows a knowledge of the boy’s right to freedom at the time of sale, and sets forth two principles, on one or other of which the matter should be adjusted. There is not one word of this, from which the plaintiff could have drawn any admission or inference : the fact of emancipation depended upon the deed, and was established by the suit in forma pauperis: the identity of the boy is not admitted, though the writer supposes him to be the same, and the terms of liability rest upon legal principles, and not on the party’s admission. The letters, then, could *453 only have been introduced to prove this offer to pay, as an admission of liability. They contain no acknowledgment of any one fact, and are not therefore within the authorities. It is said, indeed, that they were proof of notice to the defendant, and they were relied on for that purpose, in order to give conclusiveness to the record of the judgment in the suit for freedom: but this cannot be; for they are dated near twelve months before the first proceedings in that sttit, and they do not indicate that Brown had received any intimation where Shields would be sued, a,nd in point of fact he was sued in a county distant from his residence. Not contesting, then, the principles or authorities quoted and relied on by my brother Carr, I differ from him as to their applicability to this case.
Let us then see, whether this letter was proper evidence to prove a promise of payment, with a view to establish an admission of liability. The law is very clear, that an offer to pay money, by way of compromise to get rid of an action, is not evidence. 1 Call 23. 5 Munf. 538. 1 Phil. Law Ev. 83.* An admission made for the purpose of buying peace, is not evidence, since the offer may have resulted not from a consciousness of the truth of the claim, but from a desire to avoid litigation; and therefore, where it appears to be probable, that such was the motive, the evidence is not admissible. 2 Stark. Law Ev. part 4. p. 38. Now, in this case, it is evident, that Brown contemplated a demand on him by Shields. He must also have been conscious, that he might be made responsible for the boy Edmond, though he had been ignorant of his right to freedom, and though he had not expressly warranted him (for we cannot look to the covenant to warrant, it being out of the case;) yet it was possible he might get clear. For if he had known of Edmond's right to freedom, and had not warranted him, and if Shields *454 should not have proof that he represented him to be a slave for life, he would get clear'. If, however, he was made liable, he might, for aught he knew, be made liable for principal and interest, without an allowance of the hires as a set-off; or he might be made liable for an increased value of the slave. This is the point,— this is the very object,—of his letter. Whether he be liable or not, he is willing to acknowledge himself so, provided he can get clear of interest, or can be allowed hires. The promise to pay was thus distinctly made with a view to the proposition, that Shields should receive principal without interest, or set off hires against the interest. The proposition was not accepted. Why ? Because Shields chose to go for the whole, to which, by the way, he has no just title, for Brown’’s proposal seems to me both fair and legal. Shields, then, having rejected the proposal, cannot avail himself of it as evidence. It was no evidence, that Brown knew he was liable, for though he might, in his conscience, have been satisfied that he was not liable, he probably knew so well the uncertainty of litigation, as to give up the chance of getting complete justice, for the certainty of diminishing the inordinate demands that might be set up against him.
As to the other bills of exceptions, I shall say little. The record from Rockingham was, I think, admissible evidence of the fact of the recovery of freedom by the slave; and it would have been evidence also of his title to freedom, if accompanied by proof that Brown had notice of the pendency of the action, so as to have been able to come in and defend it. Hunter v. Britts, 3 Camp. 455.
As to the third bill of exceptions, if it had been distinctly shewn, that the covenant to warrant set forth therein, was entered into upon the sale of the slave, I should have had no doubt, that an action could not have been maintained on an implied warranty; nor do I think *455 it would have lain for a deceit,-—for where there is a warranty, the vendor relies upon the warranty, and is not deceived by the representation, upon which it is obvious he does not rely. Moreover, here was a warranty by two, who contracted to be jointly charged for failure of title. The action of deceit against one, not only puts the burden on his shoulders alone, but places it there irrevocably; ibr if he be a tortfeasor, he cannot have contribution from the other. I have no doubt, therefore, that the action should have been on the covenant; but the bill of exceptions is so inartificially drawn, that we cannot say the court erred in refusing the instruction asked for, in relation to this matter.
It did err, however, in refusing to direct the jury to disregard the faulty count. The first count being in tort, we must take the second to be in tort also, unless it is plainly in assumpsit; otherwise, we should make the whole declaration bad by a misjoinder of counts. 1 Chitt. Plead. 196-199. But this count has no trace of assumpsit about it. There is no assumpsit or promise laid, and it corresponds not at all with the form of declaring in assumpsit upon a representation; 2 Id. 139. And as a count for deceit, it is clearly defective, since there is no fraud charged. A representation, without a scienter, with an allegation “that in truth the slave was entitled to freedom,” though it might have been the foundation of an assumpsit, if laid, certainly does not prove a deceit. The count then was bad; a,nd the court having refused the instruction, and the verdict having been founded on this count, it must be set aside. I have no doubt the scheme of the declaration was, to declare in one count upon the fraud, but lest they should fail in proof of that, to have another count not charging a fraud. The result has proved, that the fraud could not be established, for the jury have found upon this count, and refused to find on the other.
*456 As to the last bill of exceptions, the court was right in refusing the instruction. I shall not attempt to lay down a rule as to the measure of damages in actions upon warranties of personalty. It is a subject of much difficulty, and it is better that its principles should be settled in detail, as cases present themselves; Suffice it to say, that the purchase money at the time of the sale, with interest, was not in this case necessarily the measure of damages. The defendant was certainly entitled to a set-off of hires against interest, if the value at the time of the sale with interest was adopted by the jury as the measure. But, in truth, in these cases, there can, I think, be no general rule laid down. To give the purchase money with interest for a slave of great value at the time of the sale, who by disease or accident has become worthless before eviction, would be injustice to the vendor; and the same measure might be unjust to the buyer, who has purchased a slave when a child, for a small sum, and has lost him after having made him a valuable mechanic. I shall not, therefore, attempt to lay down any rule, as the case does not demand it, and as it will be found, most probably, that every case of the kind will depend upon its own particular circumstances.
Upon the whole, therefore, it is clear that judgment ought not to have been rendered for the plaintiff, and it must therefore be reversed. What is then to be done ? The jury having expressly found for the defendant upon the only good count, and no error appearing to the prejudice of the plaintiff, the judgment must be entered for the defendant.
Judgment reversed, and judgment entered for appellant.

New York edition of 1820.